IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 26, 2005

## STATE OF TENNESSEE v. JAMES EDWARD LONG

**Appeal from the Criminal Court for Davidson County**
**No. 2002-B-998     J. Randall Wyatt, Judge**

_____

**No. M2004-03042-CCA-R3-CD - Filed November 15, 2005**

_____

Aggrieved of the Davidson County Criminal Court's revocation of his probation, the defendant, James Edward Long, appeals. He presents two issues on appeal: (1) whether the state adequately informed the defendant of the factual basis for the revocation and (2) whether the trial court abused its discretion in ordering the defendant to serve the balance of his sentence in confinement. We affirm the order of the Criminal Court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Ross E. Alderman, District Public Defender; and Jeffrey A. DeVasher (on appeal) and Jonathan F. Wing (at hearing), Assistant District Public Defenders, for the Appellant, James Edward Long.

Paul G. Summers, Attorney General & Reporter; Blind Akrawi, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bernard McEvoy, Assistant District Attorney General, for the Appellee, State of Tennessee.

**OPINION**

Pursuant to the defendant's guilty plea, the Davidson County Criminal Court entered judgment on March 3, 2003, convicting the defendant of child abuse and sentencing him to a six-year term to be served on probation. Apparently, the charge and conviction resulted from the defendant's whipping his one and one-half-year-old son with a belt. On August 7, 2003, the state obtained a probation violation warrant, based on an affidavit alleging that the defendant failed to report to his probation officer and failed to cease residing at 935-A 42d Avenue North, Nashville, as required by the probation officer. On September 26, 2003, the court approved the parties' agreement as to disposition of the warrant; it revoked the defendant's probation and ordered him to serve 90 days in confinement, followed by a resumption of probation.

On June 11, 2004, the state obtained a second probation violation warrant, based on an affidavit alleging that the defendant refused to submit to drug testing, admitted using marijuana while on probation, and failed to pay court-ordered fees. An amended affidavit and warrant claimed also that the defendant resisted arrest when police officers arrested him on the June 11, 2004 violation warrant, failed to report the arrest, failed to submit proof of employment, and failed to comply with requirements that he obtain permission from his probation officer before changing his address or employment. On November 5, 2004, the trial court conducted a revocation hearing.

In the hearing, the defendant's probation officer testified that on June 10, 2004, at the probation office, the defendant refused to take a requested drug test because the defendant believed that the result would be positive for marijuana use and because he believed he was "exempt" from taking the test. The officer testified that the defendant told him that someone in the probation office "scratched through" the rule that required drug testing for probationers. In response to this claim, the officer took the defendant to meet with a probation office supervisor, but the defendant became so loud and intimidating that the officer "thought we were going to have an incident." The officer testified that the defendant refused to leave the probation office until the officer stated he would call the police to have the defendant removed.

As a result of the June 10 incidents, the officer obtained a revocation warrant, and the police officers' attempt to arrest the defendant on the warrant resulted in a new charge of resisting arrest. The probation officer testified that the defendant pleaded guilty to this charge and was convicted in general sessions court on August 27, 2004. The defendant did not notify his probation officer of the arrest, and he failed to provide proof of employment.

A second probation officer testified that he was in the probation office on June 10, 2004, when he heard a commotion and went to see what was happening. He observed the defendant to be "pretty unruly and pretty belligerent . . . pretty upset." The officer testified that several officers converged around the defendant, and "they were waiting on [the defendant] to do something of a violent nature." The officer acknowledged that the defendant made no "direct threats or anything." The officer escorted the defendant to the foyer of the office and conversed with him until he calmed down and left.

The defendant testified in the hearing that although June 10, 2004 was during a "stressful time" for him, he was not belligerent or assertive during his visit to the probation office on that day. He testified that he admitted to his probation officer on June 10 that he had been "smoking marijuana ever since [his] two children have been in state custody" and that he was "stressed about that." He testified that marijuana "stills [his] body from being depressed about [his] kids being in state custody." The defendant stated that he used marijuana, a "natural herb," because he did not trust "man-made medications." He testified that he used marijuana to "keep [him] calm, to keep [his] past history [of being abused as a child], to keep my childhood off of my mind all the time." The defendant testified that June 10, 2004, was the first time during his probation that he had been instructed to undergo a drug test. He testified that he is a Muslim and that, per his custom, he greeted the probation officer with a Muslim handshake, which apparently involved him grasping the

wrist of the other person. The defendant opined that the probation supervisor was unjustifiably unnerved and provoked by this gesture, causing the supervisor's ill feeling toward the defendant.

Following the revocation hearing testimony, the trial court determined that the defendant had been convicted of resisting arrest. Accordingly, the court revoked the defendant's probation. The trial judge stated, "I don't think that there's anything in the world that I've heard here that causes the Court to believe that this man ought to be on probation anymore out of this Court." The court noted that, in addition to the offense for which the defendant was on probation, he had also been convicted in Williamson County of sexual battery, aggravated burglary, and aggravated robbery. On November 5, 2004, the court entered its order providing that "the previously imposed judgment is placed into effect." On December 2, 2004, the defendant filed a notice of appeal.

On appeal, the defendant claims that the trial court erroneously revoked his probation because he received no notice that the June 10, 2004 incident would form the basis for revoking his probation, and that the trial court abused its discretion in "placing the defendant's entire sentence into effect upon finding that he had violated the terms and conditions of his probation."

The standard of review upon appeal of an order revoking probation is the abuse of discretion standard. *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). For an abuse of discretion to occur, the reviewing court must find that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the terms of probation has occurred. *Id.*; *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The trial court is required only to find that the violation of probation occurred by a preponderance of the evidence. Tenn. Code Ann. § 40-35-311(e) (2003). Upon finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered." *Id.*

A probationer is entitled to notice of the bases upon which the state seeks to revoke probation, and he or she is entitled to a hearing. *Gagnon v. Scarpelli*, 411 U.S. 778, 781-82, 93 S. Ct. 1756, 1759-60 (1973); *State v. Stubblefield*, 953 S.W.2d 223, 225 (Tenn. Crim. App. 1997); *see* Tenn. Code Ann. § 40-35-311 (2003).

First, we examine the claim that the trial court relied upon a basis for revocation that was not stated in the warrant. We disagree that the trial court based its *revocation* determination upon the "incident" on June 10, 2004. Instead, the trial judge stated, "[H]e's been found guilty, been convicted of [committing] another offense while he's on probation for this offense." In our view, this fact, apparently undisputed, formed the basis for the decision to *revoke* probation. We know that "only one basis for revocation is necessary." *State v. Alonzo Chatman*, No. E2000-03123-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Knoxville, Oct. 5, 2001). The new-offense basis for revocation was stated in the amended violation warrant. We hold that the defendant had adequate notice of the commission of another offense while on probation as a basis for revocation and that the trial court's decision to revoke probation based upon this ground is supported in the record.

Next, we hold that the trial court acted within its discretion when ordering the defendant to serve the balance of his sentence in confinement. We infer from the trial court's findings that it did consider the June 10, 2004 incident and the chronic marijuana use while on probation as bases for *determining the result* of the revocation. Following the court's recounting the defendant's marijuana use and the somewhat discordant visit to the probation office on June 10, 2004, the court opined that it had no reason to "believe that this man ought to be on probation *anymore* out of this court." (Emphasis added.) We believe the court referred to a previous revocation proceeding, which resulted in a revocation and a resumption of probation after 90 days' confinement. The court also expressed concern over the defendant's multiple felony conviction record from Williamson County. The judge concluded, "So it's just unbelievable, frankly, that this man was ever put on probation, to begin with." In our view, the trial court was expressing its views on the aptness of further probation versus confinement. Obviously, it opted for the latter, and we hold that the decision is supported in the record.

The defendant poignantly argued in his brief that he had long treated a schizophrenic illness through the therapeutic use of marijuana and that his probation agreement did not prohibit this self-prescribed, innocuous treatment regimen. He characterized his probation revocation and order of confinement as the culmination of an unfortunate escalation of events: He admitted marijuana use as an alternative to a drug test, resulting in a meeting with a probation supervisor, who misunderstood the defendant's proffer of a "Muslim handshake"; the misunderstanding led to some discordance, which caused the supervisor to obtain the revocation warrant; and a resisting-arrest charge and conviction resulted when the officers attempted to serve the unjustified warrant. The defendant's ability to cast his actions in a sympathetic light, however, does not equate to an abuse of the trial court's discretion. Other facts in evidence provided a basis for the trial court's attribution of blame to the defendant, and based upon these facts – the reoffending, the illicit use of a controlled substance while on probation, an incredible claim that the probation rules did not proscribe marijuana use, and a prior felony conviction record – the trial court was justified in ordering confinement.

Therefore, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE